UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM LEE THUSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:25-cv-901-GMB |
| ) | |
| MUTUAL OF OMAHA ) | |
| INSURANCE COMPANY, *et al*., ) | |
| ) | |
| Defendants. ) | |

# **MEMORANDUM OPINION**

Plaintiff William Lee Thuston filed a second amended complaint against Mutual of Omaha Insurance Company and United of Omaha Life Insurance Company. Doc. 1. The second amended complaint alleges claims for breach of contract against United of Omaha, negligence against Mutual of Omaha, and equitable estoppel against both defendants. Doc. 22 at 6–10. Thuston also seeks a declaratory judgment against both defendants. Doc. 22 at 10–11. Before the court is the Motion to Dismiss the Second Amended Complaint. Doc. 23. The motion is fully briefed (Docs. 23, 28 & 31) and ripe for decision. For the following reasons, the motion is due to be granted.

## **I. STANDARD OF REVIEW**

The defendants raise jurisdictional and merits challenges in their motion to dismiss. Doc. 23. First, they claim that Thuston lacks standing to bring this suit.

Doc. 23 at 5–8. "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."[1] *Cone Corp. v. Fla. Dept. of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. U.S. v. Orlando Reg. Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). A "'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion,'" *McElmurray v. Consol. Govt. of Augusta–Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007) (alterations in original) (quoting *Lawrence v. Dunbar*, 919 F.3d 1525, 1529 (11th Cir. 1990)). A factual attack, on the other hand, serves to "challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits[,] are considered.'" *Id*. (citation omitted).

Second, the defendants contend that the second amended complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 23 at 8–14. A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard in Rule 8: "a short and plain statement of the claim showing that the

---

[1] The defendants cite only Rule 12(b)(6) in their motion. *See* Doc. 22.

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss for failure to state a claim, the court must accept well-pled facts as true, but the court is not required to accept a plaintiff's legal conclusions. *Id*.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Conclusory allegations that do not rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). It is the plaintiff's responsibility to allege sufficient facts to support his claims. *Twombly*, 550 U.S. at 555.

The court should limit its scope of review on a motion under Rule 12(b)(6) to the four corners of the complaint. *See Speaker v. U.S. Dept. of Health & Human*

*Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).  Even so, the court "'may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.'" *Id*. (internal quotation marks omitted) (quoting *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010)).

## II.  FACTUAL ALLEGATIONS

Thuston's factual allegations are straightforward.  He applied for a life insurance policy with United of Omaha and identified himself as the proposed insured. Doc. 22 at 2.  United of Omaha issued the policy with Thuston as the named insured and owner and with his estate as the named beneficiary. Doc. 22 at 2–3; *see also* Doc. 23 at 55.  The policy set an annual premium payment due on June 1st of each year. Doc. 23 at 35–37.  Thuston paid the first year's premium in full when United of Omaha issued the policy. Doc. 22 at 3.

Thuston purchased the policy as a gift to Samford University. Doc. 22 at 2.  For this reason, after United of Omaha issued the policy, "Thuston arranged for Samford [University] to be the owner and beneficiary of the Policy." Doc. 22 at 3.  He remained the named insured. Doc. 22 at 3.  Afterwards, the defendants[2] mailed a

---

[2] The second amended complaint alleges the "Defendants" mailed the premium notices and references examples of premium notices attached to the second amended complaint.  The example notices are from United of Omaha and instruct "payment payable to United of Omaha."  The addressee for the premium payments is Mutual of Omaha Companies. Doc. 22-2.

premium notice to Samford annually. Doc. 22 at 3. "[P]ursuant to his gift to Samford, Thuston gave Samford the money for the annual premium payments," and then Samford paid United of Omaha each year. Doc. 22 at 3.

The defendants did not mail a premium notice to Samford in 2024 and Samford did not make a payment on the policy by June 1, 2024. Doc. 22 at 4. The defendants also did not send Samford or Thuston a notice of nonpayment or a notice that the policy would lapse if Samford failed to pay. Doc. 22 at 5. Instead, on August 16, 2024, Samford received a notice that the policy lapsed for nonpayment and "coverage has terminated." Doc. 22 at 5; Doc. 22-3 at 2. Samford contacted United of Omaha and requested reinstatement. Doc. 22 at 5. United of Omaha claimed that it sent notices to Samford in May and June 2024, but Samford could not find records to support that claim. Doc. 22 at 5. Samford completed all necessary forms and reinstatement requirements for the policy, but the defendants denied the request to reinstate. Doc. 22 at 6. A little over three months after the denial, "Samford made a full payment of all premium amounts" that had been due, but the defendants rejected this payment. Doc. 22 at 6. Finally, on "May 13, 2025, Samford assigned all rights, title, and interest in and to the Policy to Thuston." Doc. 22 at 6. Thuston filed this lawsuit on June 10, 2025. Doc. 1.

### III. DISCUSSION

The defendants contend that Thuston does not have standing to bring this

lawsuit. Doc. 23 at 5–8. And even if he does have standing, they argue that the second amended complaint fails to state a claim. Doc. 23 at 8–14. Because the court agrees that Thuston does not have standing, the court will not address the defendants' merits arguments.

Standing is a jurisdictional prerequisite. Article III of the United States Constitution empowers the federal courts to decide only "Cases" and "Controversies." U.S. Const., Art. III, § 1. One of the "landmarks[] setting apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III . . . is the doctrine of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). The party asserting a claim bears the burden of proving his standing to do so, *id.*, and the "focus of the standing inquiry is 'whether the plaintiff is the proper party to bring this suit.'" *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). The Supreme Court has explained "that the 'irreducible constitutional minimum' of standing under Article III consists of three elements: an actual or imminent injury, causation, and redressability." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011) (citing *Lujan*, 504 U.S. at 560–61). "The injury-in-fact element requires 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (citing *Lujan*, 504 U.S. at 560). The standing requirements are

not mere pleading requirements and therefore "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree required at the successive stages of litigation." *Lujan*, 504 U.S. at 561. A "plaintiff without an injury in fact lacks Article III standing, and the federal courts do not have jurisdiction over his or her complaint." *Stalley v. Orlando Reg. Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). An interest "unrelated to injury in fact" will not suffice for standing. *Id.*

Consistent with this doctrine, the question before the court is whether the second amended complaint alleges a legal injury on behalf of Thuston. To be sure, the second amended complaint claims that Thuston "suffered damages" because of the alleged breach and cancellation of the life insurance policy. Doc. 22 at 7 & 8. But a conclusory allegation of injury is insufficient. In Alabama, "one not a party to, or in privity with a contract, cannot sue for its breach." *Twine v. Liberty Nat. Life Ins. Co.*, 311 So. 2d 299, 305 (Ala. 1975). The second amended complaint does not claim that Thuston was a party to the contract at the time of the breach. For this reason, he could not be injured by the defendants' breach of the agreement or failure to send premium notices. This also means that he does not have any "legally protected interest" in the policy. *Lujan*, 504 U.S. at 560. And there is no allegation he is a third-party beneficiary to the contract. *See Cook v. Trinity Univ. Ins. Co. of Kan*, 297 F. App'x 911, 914 (11th Cir. 2008) (explaining that one who is not a party

7

to or a third-party beneficiary of a contract has no standing to sue for breach of the contract under Alabama law); 13 WILLISTON ON CONTRACTS § 37:1 (4th ed.) (discussing expansion of traditional common-law rule that only parties in privity of contract can sue to permit third-party beneficiaries to enforce contracts under certain circumstances). Once Thuston gifted the policy to Samford, his lifespan may have continued to affect the rights of the parties to the policy, but there was no longer any contractual relationship between him and either of the defendants.

Thuston counters that he has standing "as the payor of the policy, his close involvement with the Policy for eight years, and the fact that he has been injured by virtue of his gift not being fulfilled." Doc. 28 at 3. The court disagrees. First, the complaint does not claim that Thuston was the payor of the policy premiums when the policy lapsed. Instead, it alleges that "Thuston gave Samford the money to pay for the annual premium payments," but it was Samford who paid United of Omaha each year. Doc. 22 at 3. The court has been unable to find, and Thuston has not provided,[3] any authority for the proposition that an arrangement of this type satisfies the standing requirement. Second, the court is not persuaded by Thuston's claim of injury by virtue of an unfulfilled gift since he completed his gift when he "arranged

---

[3] Thuston cites two cases, but they are not on point because the insurance companies in both cases billed the plaintiffs and the plaintiffs paid the premiums directly. *Nat. States Ins. Co. v. Jones*, 393 So. 2d 1361, 1364 (Ala. 1980); *Newson v. Protective Indus. Ins. Co. of Ala.*, 890 So. 2d 81, 84 (Ala. 2003).

for Samford to be the owner and beneficiary of the Policy." Doc. 22 at 3.

Finally, the court rejects Thuston's effort to rely on the attempted post-breach assignment of Samford's claims to him.  In general, assignees may obtain Article III standing by virtue of a valid assignment so long as the assignor had standing to bring the claims.  *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("[T]he assignee of a claim has standing to assert the injury in fact suffered by the assignor."); *see Simon v. Shearson Lehman Bros.*, 895 F.2d 1304, 1322 (11th Cir. 1990) (providing that "the party that relies on an assignment has the burden of proving its existence and validity").  The problem here is that the complaint does not allege a valid assignment under Alabama law.  The second amended complaint claims that Samford "assigned all rights, title, and interest in and to the Policy to Thuston." Doc. 22 at 6.  But the court cannot accept this statement at face value.  The existence and validity of a contract between Thuston and the defendants—through the assignment of Samford's claims—is a legal conclusion, not factual one. *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1068 (11th Cir. 2017) ("But since Defendants do not allege facts showing that this alleged agreement actually exists, their allegations simply recite a legal conclusion—the existence of an agreement. So they are inadequate for pleading purposes.").  And "standing cannot be inferred argumentatively from averments in the pleadings" when it is the plaintiff's burden "clearly to allege facts demonstrating that he is a proper party to invoke judicial

9

resolution of the dispute." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotations and citations omitted).

In Alabama, an insurance "policy may be assignable or not assignable, as provided by its terms." Ala. Code § 27-14-21.  The policy here permits assignment only after United of Omaha "record[s] and acknowledge[s]" the assignment (Doc. 23 at 41), and the complaint is silent as to this prerequisite.  The court therefore finds that the second amended complaint does not allege a valid assignment of the policy to Thuston. *See Zatarain v. Acceptance Indem. Ins. Co.*, 2016 WL 397463, at * 2 (N.D. Ala. Feb. 2, 2016) ("Because the policy prohibits assignment without [the insurance company's] consent, and because neither [Plaintiff nor Defendant] allege consent, the assignment is null and void.").

In response, Thuston contends that "Samford did not assign the Policy itself" but "assigned its rights and interests under the Policy, including its breach of contract claim." Doc. 28 at 3 (emphasis omitted).  This hair-splitting ignores the allegation that "Samford assigned . . . title in and to the Policy to Thuston." Doc. 22 at 6.  In addition, Thuston relies on Alabama Code § 8-5-20 for the proposition that "[b]reach of contract claims are assignable under Alabama law," but this statute applies to nonnegotiable instruments and is a component of Title 8.  Thuston has not identified a parallel provision withing Title 27 of the Alabama Code, which governs insurance policies, or any support in caselaw relating to insurance agreements.  More

fundamentally, any rights and interests under the policy must travel with the policy itself, returning Thuston to the roadblock of the policy's prohibition on assignability absent United of Omaha's consent.

## IV. CONCLUSION

For these reasons, it is ORDERED that the Motion to Dismiss (Doc. 23) is GRANTED.  The court will enter a separate order dismissing this case without prejudice.

DONE and ORDERED on February 26, 2026.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE